**GREENE, TWEED OF DELAWARE, INC. Plaintiff/Counter–Defendant,**

v.

**DUPONT DOW ELASTOMERS, L.L.C. and E.I. DuPont de Nemours and Co., Inc., Defendants/Counter–Plaintiffs.**

No. CIV.A.00–3058.

United States District Court, E.D. Pennsylvania.

Aug. 19, 2003.

---

See also 202 F.R.D. 418.

Leora Ben–Ami, Thomas F. Fleming, Neer Gupta, Steven J. Lever, Gerard P. Norton, Philip E. Roux, Christopher Serbagi, Mark S. Stewart, Jacqueline M. Vernon, Samuel Waxman, Clifford, Chance, Rogers & Wells, LLP, New York City, for Defendants.

Kristyne A. Bullock, Lynda L. Calderone, Kevin R. Hamel, Ronald L. Panitch, Michael S. Caldwell, David P. Callet, Shari L. Fleishman, Nicole H. Sprinzen, Akin, Gump, Strauss, Hauer & Feld, Philadelphia, PA, for Plaintiffs.

### MEMORANDUM

BUCKWALTER, District Judge.

This opinion deals with the defense of laches raised by defendants. The court has considered the testimony during the entire trial, including the separate hearing held outside the presence of the jury on June 11, 2003.

## I. FINDINGS OF FACT

1. On October 24, 1995, U.S. Patent No. 5,461,107 ("the '107 patent"), entitled "Perfluoroelastomeric Compositions and Seals Having Improved Chemical Resistance and Methods of Making the Same", issued naming as inventors Harshad P. Amin and Carl A. Aufdermarsh. *See* Stipulation of Fact 2 (Trial Tr. Day 9 at 26). The '107 patent was assigned to and is owned by Greene Tweed. *See* Trial Testimony of Felix Paino (Day 1) at 130–131.

2. On June 12, 2003, the jury found that Defendants E.I. du Pont de Nemours and Co., Inc. ("DuPont") and DuPont Dow Elastomers, L.L.C. ("DuPont Dow") infringed and willfully infringed Greene Tweed's '107 patent, specifically claims 9 and 11–14, and that the products made by the infringing method are Kalrez® 8101, Kalrez® Sahara 8385, Kalrez® Sahara 8375, and Kalrez® 4120. *See* Jury Verdict Form. In addition, Greene Tweed alleged that Zalak® 325ZR was made by the method of the '107 patent. The jury also found the asserted claims of the patent-in-suit invalid.

3. Defendants learned of the '107 patent at least as early as April 1996, within six months of the issuance of the '107 patent. *See* Trial Testimony of Marilyn Bromels (Day 7) at 5. Thereafter, DuPont Dow wrote to its outside counsel Rogers & Wells, and described its proposed process and requested an invalidity opinion on the '107 patent. Letter, July 3, 1996, M. Bromels to P. Roux, P.Ex. 242. That opinion was purportedly received in oral form in August 1996 and in written form October 1996. *See* Trial Testimony of Marilyn Bromels (Day 7) at 37; Letter Opinion, October 18, 1996, P. Roux and M. Kelley to M. Bromels, D. Ex. 52.

4. DuPont Dow's opinion of counsel from Rogers & Wells concluded that the '107 patent would be found invalid based on prior inventorship by and deriva-

tion from DuPont. Letter Opinion, October 18, 1996, P. Roux and M. Kelley to M. Bromels, D. Ex. 52.

5. DuPont Dow's legal and business executives repeatedly testified that they relied on the opinion that the '107 patent was invalid in continuing to sell Kalrez® 8101, which the jury found to infringe Greene Tweed's '107 patent, and in introducing further products found by the jury to infringe, and that it was based on the opinion of invalidity that DuPont Dow went forward with the development and commercialization of its Kalrez® Sahara products. See Trial Testimony of Marilyn Bromels (Day 7) at 65–66, 77, 92; Trial Testimony of Julia Shaw (Day 8) at 19–22; Trial Testimony of Ronald Smith (Day 6) at 11–12, 26–27, 30.

6. Defendants never notified Greene Tweed of the steps in their process or the components used in that process until the discovery phase in this litigation. See Trial Testimony of Felix Paino (Day 1) at 142–144; P.Ex. 693; P.Ex. 695; P.Ex. 697.

7. In late 1998 and 1999, Charles Stewart informed Phil Paino, President of Greene, Tweed and Co., Inc., that DuPont Dow was infringing Greene Tweed's '107 patent with its Kalrez® Sahara products. See Trial Testimony of Felix Paino (Day 1) at 134–135; Trial Testimony of Felix Paino (Day 17) at 198–199.

8. This gave Mr. Paino reason to investigate further, and Mr. Paino directed that certain steps be taken to further investigate. Mr. Paino directed that samples of the Kalrez® Sahara products be obtained. See Trial Testimony of Felix Paino (Day 1) at 135–136. Knowing that the Sahara products were advertised as being made with a Kalrez® perfluoroelastomer, Mr. Paino additionally sought proof that they were made with a fluorocarbon particulate polymer. See id. at 135. He directed that a differential scanning calorimetry (DSC) test be run. This test analyzes what a material is composed of by examining the melting curves of the material. This test was run in May 1999 and revealed that there was a fluorocarbon particulate polymer in the Kalrez® Sahara sample tested. See id. at 136–137; DSC test, P.Ex. 1406.

9. Thereafter, Mr. Paino felt he had sufficient information to write to DuPont Dow and raise the '107 patent and inquire whether, and if so why, DuPont Dow might believe that it did not infringe the '107 patent. He directed an attorney to write to DuPont Dow's president, enclosing the '107 patent and inquiring as to DuPont Dow's process should DuPont Dow not believe it was infringing the '107 patent so that Greene Tweed could make a reasonable determination of non-infringement. See Trial Testimony of Felix Paino (Day 1) at 137–138; Letter from A. Mottes to Theo Krapels, dated October 20, 1999, P.Ex. 692.

10. Mr. Paino directed that an additional test be run to determine whether the fluorocarbon particulate polymer was in particulate form in the Kalrez® Sahara sample. Mr. Paino directed Harshad Amin and Timothy Edwards to take the Kalrez® Sahara sample to a laboratory (Evans East) to have a scanning electron micrograph (SEM) test run. This test photographs a cross section of the o-ring sample at high magnification. This test was run in December 1999. Mr. Amin reported to Mr. Paino that the test revealed that the fluorocarbon particulate polymer was in particulate form in the Kalrez® Sahara sample tested. See Trial Testimony of Felix Paino (Day 1) at 140–143; Trial Testimony of Harshad Amin (Day 2) at 106–111; Report from Evans East dated December 29, 1999, P.Ex. 956; SEMs, P.Ex. 956A, 956C.

11. Thereafter, after a series of additional correspondence between attorneys for Greene Tweed and attorneys for DuPont Dow, in which DuPont Dow did not

provide information as to its process for making the Kalrez® Sahara 8385 and 8375 products (neither steps in the process nor components), Greene Tweed filed this suit against DuPont Dow in June 2000. *See* Trial Testimony of Felix Paino (Day 1) at 142–144; P.Ex. 695; P.Ex. 697. At that time, the products accused of infringing were Kalrez® Sahara 8385 and 8375. *See* Trial Testimony of Felix Paino (Day 1) at 144.

12. While there was public product literature in 1993 concerning Kalrez® 8101 having a proprietary filler system including Teflon fluoroadditives, Mr. Paino testified that such information alone was not sufficient to initiate inquiry with Defendants concerning their processes. A major reason for initiating inquiry with DuPont Dow was the fact that DuPont employee Charles Stewart informed Mr. Paino that DuPont Dow was infringing the '107 patent. *See* Trial Testimony of Felix Paino (Day 17) at 194–195, 197–198.

## II. CONCLUSIONS OF LAW

The above findings of fact do not establish laches. There simply was not an unreasonable delay from the day plaintiff knew or reasonably should have known of the infringing activity and the time he filed suit.

There is simply no evidence that plaintiff should have known of the infringing activity before Dr. Stewart notified Felix Paino in late 1998. Thereafter, the plaintiff acted expeditiously.

An order follows.

### *ORDER*

AND NOW, this 19th day of August, 2003, the court finds that defendants' laches defense is DENIED.